**UNITED STATES of America,**
**Plaintiff,**

v.

**Marvin L. KLINE, Fred Fadell, Abraham L. Koolish, David F. Koolish, John B. Carnell, Philip G. Rettig, J. George Zimmerman,**

No. 4–62–Cr–7.

United States District Court
D. Minnesota,
Fourth Division.

June 4, 1962.

Miles Lord, U. S. Atty., and Hartley Nordin, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Harry Peterson, Minneapolis, Minn., for defendant Kline.

Albert E. Jenner, Jr., Robert E. Pfaff, and James A. Sprowl, Chicago, Ill., and Benedict Deinard, Minneapolis, Minn., for defendants A. Koolish, D. Koolish, John Carnell and Philip Rettig.

John M. Simpson, Minneapolis, Minn., for defendant Fadell.

L. H. Mikeworth, White Bear Lake, Minn., for defendant Zimmerman.

DEVITT, Chief Judge.

This is a mail fraud prosecution against 7 defendants—4 of whom live in the Chicago area, and 3 of whom live in the Minneapolis-St. Paul area.*

The indictment alleges a scheme to defraud and the use of the mails in furtherance of it. A conspiracy is also alleged.

The 4 Chicago defendants move for a transfer of the case to the Northern District of Illinois, or to some other District, under Rule 21(a) of the Federal Rules of Practice and Procedure, 18 U.S.C.A., claiming that because of prejudice against the defendants in the District of Minnesota they cannot obtain a fair and impartial trial here. Defendant Kline joins in the motion. The other two Minnesota defendants have not opposed, but have not joined, in the motion.

In support of its motion, the moving defendants present a large number of newspaper clippings from the Twin City newspapers, and offer transcripts of radio and television news stories from Minnesota stations, which reflect the extensive publicity all of these defendants have received in connection with the investigations of the matter, their indictment for the instant offense by the Federal Grand Jury, the trial and conviction of Kline in the Minnesota State Court for the crime of first degree larceny, the claimed previous violations of the law by the Chicago defendants in connection with mail solicitations for a war veterans organization, and other associated events.

The defendant Kline allegedly entered into illegal agreements with some or all of the other defendants by which large amounts of money ended up in his pocket and in those of his co-defendants to the detriment of the Kenny Foundation and its contributors. It is claimed that an exorbitant precentage of the charitable contributions collected for the Kenny Foundation by the Chicago defendants was charged as expenses for the collections.

Briefly stated, the alleged scheme to defraud was that the defendants would gain and hold control and possession of a list of Kenny Foundation contributors for the benefit of the Chicago defendants by means of bribery of Kenny Foundation personnel, and by concealing from the Kenny Foundation Directors and contributors the true cost of the mail fundraising operations and the true identities of the operators.

There is no question in my mind that the events in connection with the Kenny Foundation in the last two years have been a fertile source of publicity for the newspapers and for the radio and television stations in the Minnesota area. But the mere fact that there has been much publicity does not mean that the defendants cannot get a fair trial here. And of course the only way to determine whether or not a fair and impartial jury can be picked in Minnesota is to start questioning prospective jurors to actually see the extent of prejudice, if any, against these defendants.

The moving defendants urge that two recent decisions of the United States Supreme Court furnish strong support for the motion to transfer this matter to Chicago, or elsewhere, for trial. The cases are, Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, and Janko v. United States, 366 U.S. 716, 81 S.Ct. 1662, 6 L.Ed.2d 846.

In Irvin v. Dowd, certain sensational publicity permeated a small town in Indiana in which a trial for murder was held. The voir dire examination indicated that 90% of 370 prospective jurors and

---

* The Chicago defendants are Abraham Koolish, David F. Koolish, John B. Carnell and Philip G. Rettig. They operate a mail solicitation business.

Marvin Kline is the former Executive Director of the Elizabeth Kenny Founda-tion, a charitable corporation which aids victims of infantile paralysis.

Fred Fadell was Public Relations Director, and J. George Zimmerman was Auditor, of the Kenny Foundation.

⅔ of those seated in the jury had an opinion as to guilt, and the accused unsuccessfully challenged for cause several persons accepted on the jury. It appears that Irvin is a unique case, and the trial judge, when faced with the overwhelming evidence of prejudice upon voir dire, should have then transferred the case elsewhere or granted a continuance. It is not likely that, at the contemplated time of trial, in the Fall of 1962, any similar widespread prejudice will be manifest here, notwithstanding the defendant Kline is a well-known person who served as Alderman and Mayor of the City of Minneapolis, and even though his claimed criminal activities and those of his fellow defendants have been the subject of a great amount of publicity. At all events, that determination cannot be accurately made until voir dire examination is commenced.

The other Supreme Court case, Janko v. United States, represents a reversal of a holding of the Court of Appeals of the Eighth Circuit, 281 F.2d 156. But it is a short pro forma opinion based on a confession of error by the then Solicitor General. That case involved a trial in the Eastern District of Missouri. A reading of the decision of the Court of Appeals, which recites the action of trial judge Weber in dealing with the claimed prejudice of the jurors, indicates to me that the trial judge did everything that was reasonable or possible under the circumstances, and that he committed no error in proceeding as he did. The Court of Appeals affirmed his actions. The Supreme Court reversed solely on the "say-so" of the Solicitor General that the trial judge committed error. In effect, this confession of error by the Solicitor General reversed the Court of Appeals. This is a rather unusual course of events. Be that as it may, the Janko case does not constitute authority for our granting a transfer to another District where it has not yet been determined by an examination of prospective jurors that a fair trial cannot be held in the District of Minnesota.

It is interesting to observe that the case of Irvin v. Dowd, supra, was cited by the Supreme Court of the United States on May 14, 1962 in the case of Beck v. Washington, 82 S.Ct. 955. This decision affirmed the decision of the Supreme Court of Washington which affirmed the action of a Washington State trial judge in denying a motion for transfer. The defendant, former Teamster Union President Beck, was charged with embezzlement. He claimed that he could not get a fair trial in the State of Washington because of extensive adverse publicity. In that case the Supreme Court particularly examined the voir dire record and concluded that the qualifications of the jurors in that case exceeded those required by the standard enunciated in Irvin v. Dowd, as follows:

> "To hold that the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

The Beck case belies the claimed broad sweep of Irvin v. Dowd urged by the moving defendants.

The Court has examined many decisions under this Rule cited in 18 U.S.C.A., Rule 21(a), and in Barron & Holtzoff, Federal Practice and Procedure, Sec. 2091, including particularly U. S. v. Florio, D.C., 13 F.R.D. 296; U. S. v. Dioguardi, D.C., 20 F.R.D. 33; Shockley v. U. S., 9 Cir., 166 F.2d 704; Bianchi v. U. S., 8 Cir., 219 F.2d 182; U. S. v. Moran, 2 Cir., 194 F.2d 623; and U. S. v. Bletterman, 2 Cir., 279 F.2d 320, and I am satisfied from a reading of these decisions that pre-trial motions for transfers to other Districts for trial under Rule 21(a) should be granted sparingly, in exceptional cases requiring such unusual action, and then only when it appears with fair certainty that it is unlikely that a fair

trial can be had in the District where the indictment is returned. U. S. v. Florio, 13 F.R.D. 296, seems to be such a case.

Our Court of Appeals in the Eighth Circuit has stated the principle to be that:

"The ultimate question is whether it is possible to select a fair and impartial jury, and the proper occasion for such a determination is upon the voir dire examination." Blumenfield v. U. S., 284 F.2d 46, at p. 51.

The motions for transfer to another District for trial are denied; but the defendants may renew their motions at the time of trial if it appears on voir dire that it is not possible to secure a fair and impartial jury in this District.