**UNITED STATES of America**

v.

**Edward Grady PARTIN.**

**Crim. A. No. 1876.**

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Dec. 16, 1970.

---

Gerald J. Gallinghouse, U. S. Atty., E.
D. La., James D. Carriere, Asst. U. S.
Atty., New Orleans, La., for plaintiff.

Edward M. Baldwin, Louis B. Merhige,
New Orleans, La., for defendant.

WEST, Chief Judge.

On February 20, 1970, a federal grand
jury sitting in New Orleans, Louisiana
indicted Edward Grady Partin, the de-
fendant herein, charging him with a vio-
lation of Title 18 U.S.C.A. § 1503. The
indictment charges that:

"On or about January 16, 1970, in the
Baton Rouge Division of the Eastern
District of Louisiana, EDWARD
GRADY PARTIN wilfully and cor-
ruptly did endeavor to influence, intim-
idate, and impede Wade McClanahan,
a witness in the case of United States
of America v. Dunham Concrete Prod-
ucts, Inc.; Louisiana Redi-Mix Com-
pany, Inc.; Anderson-Dunham, Inc.;
Ted F. Dunham, Jr.; and Edward
Grady Partin, Criminal Action No.
1842, then pending in the United States
District Court for the Eastern District
of Louisiana, Baton Rouge Division,
in the discharge of his duty as a wit-
ness by threatening him with bodily
harm and death; in violation of Title
18 U.S.C. 1503."

At his arraignment before this Court on March 20, 1970, the defendant, accompanied by and acting on the advice of his retained counsel, entered a plea of "not guilty" to this offense. The Court granted him a period of twenty days within which to file pretrial motions or other responsive pleadings. On April 9, 1970, he filed eleven such motions, including a: (1) motion to recuse the trial judge, (2) motion for change of venue, (3) motion to dismiss the indictment on the grounds of prejudicial hostility against defendant through newspaper, television and radio publicity prior to and during the grand jury deliberations, (4) motion to dismiss the indictment based on grand jury array, (5) motion for names of witnesses appearing before the grand jury, (6) motion for a bill of particulars, (7) motion to produce all evidence in the possession of the government favorable to the defendant, (8) motion to suppress evidence illegally obtained by wiretapping, (9) motion to preclude government's use of defendant's prior criminal record, (10) motion to enjoin prejudicial publicity and to call the press to chambers for pretrial conference, and (11) motion to permit defense counsel to personally conduct the voir dire examination of prospective petit jurors.

The first of these motions, that to recuse the trial judge, was noticed for hearing on May 1, 1970, separate and apart from each of the other pending motions. Had the motion to recuse been granted, this Court would have been precluded from taking any further action in connection with this case. Title 28 U.S.C.A. § 144. The motion to recuse was denied however. See, United States v. Partin, 312 F.Supp. 1355 (E.D.La.1970). An interlocutory appeal taken from that decision by the defendant was dismissed without written opinion by the United States Court of Appeals for the Fifth Circuit. 432 F.2d 556 (CA 5—1970). The balance of defendant's pretrial motions then came on for a plenary hearing before this Court on June 22, 1970 at which time, after presentation of evidence and oral argument by counsel for both sides, the case was taken under advisement. We proceed now to rule on each of these motions seriatim.

## MOTION FOR CHANGE OF VENUE

■■ Under Rule 18, Federal Rules of Criminal Procedure venue in this case lies properly in the Eastern District of Louisiana, being the place or vicinage in which defendant is alleged to have committed the crime for which he stands indicted. Venue in criminal cases involves far more than mere procedural niceties; it is a matter of constitutional import. The Sixth Amendment provides, in pertinent part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law * * *." Cf. Art. III, Sec. 2, U.S.Const. If a judicial district is further divided into divisions, however, it is well-settled that criminal defendants do not have the constitutional right to select which division of the district in which their trial will take place. The Constitution speaks only in terms of "States" and "districts," not "divisions." Instead, the court is empowered to fix the place of trial within the appropriate district with due regard for the convenience of the defendant and the witnesses. Rule 18, F.R.Cr.P.; Lafoon v. United States, 250 F.2d 958, 959 (5th Cir. 1958); 1 Wright, Federal Practice and Procedure (Criminal), §§ 301–307 (1969). Accordingly, this case was assigned for trial in the Baton Rouge Division of the Eastern District of Louisiana.

The motion for a change of venue is brought pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure. That rule provides:

"The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so

great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district."

Defendant, Edward Grady Partin, is the business agent and chief administrative officer for the General Truck Drivers, Warehousemen and Helpers of America, Local Union No. 5, a teamsters union local located in Baton Rouge, Louisiana. Despite the seeming innocuousness of his job title, suffice it here to say only that Mr. Partin is a national labor leader of no small reputation. By virtue of that reputation alone, he is often looked to by the news media of this state as a central figure in any controversy arising out of the myriad ills which have recently plagued labor-management relations in Louisiana. Herein in fact lies the alleged difficulty. Defendant contends that for at least six years preceding his indictment in this case, he has repeatedly and unjustly been made the target of adverse publicity by different news media throughout the State of Louisiana, and particularly in Baton Rouge, the State capital. Having been accorded wide notoriety as an alleged "labor-racketeer," he says, has so prejudiced prospective petit jurors in this state against him that it would be impossible for him to receive a fair trial in this case *anywhere in Louisiana.* In response the government argues that (1) local prejudice and hostility cannot be presumed but must be established through competent evidence, and (2) if defendant does show as a fact that he cannot obtain a fair trial in the Baton Rouge Division of the Eastern District of Louisiana, then the site of the trial should be moved to the New Orleans Division of the same district. It bears repeating here that defendant is contending that he cannot obtain a fair trial *anywhere* in Louisiana, not just in Baton Rouge. We agree with the defendant when he says that the long history of labor-management unrest in Louisiana, together with speculation about the possible economic consequences for the State as a whole has been the subject of extensive news media

coverage for many years. These items after all are of significant public interest. But whether or not the news media have unjustly attributed responsibility for such unrest to defendant alone, and by so doing precluded him from being able to receive a fair trial anywhere in the State is another question entirely.

▆▆ The burden rests on the defendant to establish a reasonable likelihood of prejudice should he proceed to trial in this district. United States v. Marcello, 280 F.Supp. 510, 513–514 (E.D. La.1968). The burden is substantial. There appear to be only five reported cases in which a motion for a change of venue under Rule 21(a) has been granted. Wright, Federal Courts, § 44, p. 163, fn. 5 (2d Ed. 1970) ; Cf. 1 Wright, Federal Practice and Procedure (Criminal), § 342, p. 625, fn. 28 (1969). Defendant relies on an exhaustive collection of newspaper clippings which chronicle in some detail specific incidents of labor-management difficulty, including articles about strikes, job shutdowns, bombings, strong-arm tactics, intimidation and the like. He is often mentioned in these articles in connection with these incidents. Being a matter of public record, this Court also takes judicial notice of the fact that defendant is the subject of pending criminal indictments other than the one currently pending in this case. All of these matters have been widely publicized. Defendant relies primarily, however, on the results of what is an obviously self-serving public opinion poll which, according to him, shows the existence of widespread prejudice against him throughout the State. Conducted at his request from October 4 to October 17, 1969, by a management-consultant firm specializing in public opinion survey, Louis, Bowles and Grace, Inc., the poll allegedly encompassed five hundred registered voters, each chosen at random but all domiciled in the nine parish (county) area comprising the Baton Rouge Division of the Eastern District of Louisiana. Thirty-one interviewers, selected and trained by a subsidiary of Louis, Bowles and Grace, Inc., did the question-

ing. The questions asked were generally designed to elicit from the individuals questioned, who are said to be a representative sampling of prospective petit jurors, whether or not, because of defendant's wide notoriety as an alleged "labor-racketeer," they were so predisposed toward him that they would automatically vote for his conviction if required to serve on a jury before which he was being tried. The use of such a public opinion poll to support a motion for change of venue is not novel and has the "qualified" endorsement of the American Bar Association. See, ABA Project on Minimum Standards for Criminal Justice, Off.Dr.1968, § 3.2(c). Cf. 1 Wright, Federal Practice and Procedure (Criminal), § 342, p. 622, fn. 21 (1969). However, inasmuch as the poll involved here was originally prepared for defendant's use in another criminal case which is also pending before this Court, we find it, at best, to be only marginally relevant to the circumstances of this case. Many of the questions asked by the interviewers are structured around facts which simply have nothing to do with the indictment returned in this case, and since the poll was completed more than twelve months ago, its value today as a barometer of public opinion for or against defendant is considerably lessened.

■ At the plenary hearing had before this Court on June 22, 1970, defendant sought to lay a foundation for the admission of the poll by asking the so-called project supervisor from Louis, Bowles and Grace, Inc. to describe the conduct of the poll and then to relate the *collective* results thereof as reported to him by the various interviewers. Defendant did not call any of the interviewers themselves. The government objected, not for lack of relevance, but on the ground that such testimony was hearsay. The objection raises interesting evidentiary questions. It is important to keep in mind that we are dealing here with at least three different statement forms: (1) the answers given to the thirty-one interviewers by the individuals questioned, (2) the reports of those answers made by each of the interviewers to the project supervisor, and (3) the final report of the entire survey prepared by the project supervisor and offered by the defendant as evidence of widespread prejudice against him. Which, if any, are hearsay? By definition, "[h]earsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matter or matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence, § 226, p. 460 (1954). The key element in the definition is the requirement that the statement be offered to prove the truth of the matter asserted. Id. at 461. Turning first to the answers given to the interviewers by the individuals questioned, it is clear that those answers are not hearsay in this case for the simple reason that they were not offered by defendant to prove the truth of the matter asserted. For example, had one or more of the individuals questioned expressed the opinion to an interviewer that the defendant was guilty of numerous crimes, the defendant's purpose in offering such a statement would certainly not be to prove the truth of the matter asserted, i. e., that he was in fact guilty of numerous crimes. The obvious reason for offering such a statement in connection with a motion for change of venue would merely be to show the existence of prejudice in the surrounding community, rather than to prove the truth of the assertion itself. Thus, had the *interviewers*, rather than the project supervisor, been called to relate what they had been told by the persons they questioned, the hearsay objection would have been ill-founded. See, United States v. 88 Cases, Etc., 187 F.2d 967, 974 (3d Cir. 1951); Wembley, Inc. v. Diplomat Tie Co., 216 F.Supp. 565, 571–572 (D.Md.1963). On the other hand, when the defendant elected to rely solely on the testimony of the project supervisor to establish the results of the poll, he was clearly offering out-of-court assertions (by the *interviewers*) that cer-

tain matters (what they had been told by the persons they questioned) were in fact true. This of course is hearsay. Its probative value rests on the credibility of the out-of-court asserters, i. e., the *inter-viewers*, and as such, it is ordinarily inadmissible in evidence. Sears, Roebuck & Company v. All States Life Insurance Co., 246 F.2d 161, 171–172 (5th Cir. 1957); Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 75, fn. 35 (10th Cir. 1958). It is the opinion of this Court, however, that little would be gained in this case by requiring defendant to parade all thirty-one interviewers to the witness stand in order to overcome the government's hearsay objection. Such unnecessary cumulation would obviously be a waste of judicial time and expense and would contribute absolutely nothing to our decision on the merits of the motion for change of venue. Regardless of who lays the foundation, even a cursory examination of the poll reveals its patently self-serving nature. Thus, there being no jury involved in the hearing of a pretrial motion, the absence of the interviewers and the lack of opportunity for the government to cross-examine each of them personally under oath will simply be attributed to the weight eventually accorded the results of the poll rather than render it inadmissible altogether as evidence in this case.

▇ In this Circuit, the decision in Pamplin v. Mason, 364 F.2d 1 (5th Cir. 1966) collects and discusses the pertinent cases dealing with the standard and procedure for testing the merits of a motion for change of venue. Therein, Judge Wisdom points out that as late as 1961, in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the Supreme Court required proof of a clear *nexus* between community prejudice and jury prejudice before reversing a lower court for failing to grant a motion for change of venue. However, he goes on to say, "[m]ore recent Supreme Court cases hold that evidence of pervasive community prejudice is enough for reversal, even without the showing of a clear nexus between community feeling

and jury feeling." 364 F.2d at 4. See, Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (verdict overturned because defendant's filmed confession was televised throughout the surrounding community); Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (conviction reversed where two deputy sheriffs who were principal prosecution witnesses were placed in charge of the jury during the course of a three day trial); Estes v. United States, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (verdict overturned because televising portions of a state criminal trial in itself constitutes a denial of due process). Cf. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Thus, at least in the Fifth Circuit, "the test is no longer whether prejudice [actually finds] its way into the jury box at the trial * * *," but rather, "[w]here outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial." 364 F.2d at 5.

It might, then, be presumed that where outside influences are inherently suspect, there would be little or no point in proceeding to the voir dire stage of criminal prosecution since jury prejudice vis-a-vis community prejudice is apparently no longer a significant inquiry. *Pamplin,* however, makes it clear that this is not the case.

"Under the *Rideau* rule the trial court is not precluded from utilizing the voir dire to help gauge the intensity of community prejudice inspired by pre-trial publicity. The point of Rideau is that the trial judge need not rely solely on the prospective jurors' own protestations against their individual bias. *The court must make an independent determination of whether a fair trial can be obtained in the community based upon all the evidence available at the time."* (Emphasis added.) 364 F.2d at 6, fn. 9.

"In Estes v. United States, 5 Cir. 1964, 335 F.2d 609, cert. denied, 1965, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed. 2d 559, a post-*Rideau* decision, this Court affirmed a district court denial of an application for venue change *where the court had conducted a full hearing on the motion, the jurors were individually examined at length on voir dire,* and there was no specific showing that community prejudice had resulted from pre-trial publicity about the case." (Emphasis added.) 364 F.2d at 6, fn. 10.

Whether or not voir dire alone is the appropriate test to resolve a change of venue motion was considered at length in United States v. Marcello, 280 F.Supp. 510 (E.D.La.1968) wherein the Court said:

"The rule itself [Rule 21(a)] provides that the transfer may be made when the court is *'satisfied * * *.'* Thus, by the very terms of the rule, venue may be changed *whenever* the court is 'satisfied,' whether this be at some time prior to the voir dire, at the voir dire, or at the trial itself." (Emphasis added.) 280 F.Supp. at 514.

Accordingly, since the evidence thus far presented by defendant falls far short of satisfying this Court that there exists in this district so great a prejudice against him that he cannot obtain a fair and impartial trial in this case, in this district and division, comprising some 490,-000 people, a final decision on the motion to change venue will be deferred until such time as the voir dire examination of the prospective petit jurors is completed.

## MOTION TO DISMISS THE INDICTMENT ON THE GROUNDS OF PREJUDICIAL HOSTILITY AGAINST DEFENDANT THROUGH NEWSPAPER, TELEVISION, AND RADIO PUBLICITY PRIOR TO AND DURING THE GRAND JURY DELIBERATIONS.

■ The motion is denied. There is no provision in Rule 6(b) (1) of the Federal Rules of Criminal Procedure for challenge of grand jury members on the ground of bias or prejudice. Indeed, a preliminary draft of Rule 6(b) (1) would have apparently permitted such challenges but that provision was expressly omitted from the rule as finally adopted. See, 1 Wright, Federal Practice and Procedure (Criminal), § 102, pp. 156–158 (1969). The United States Court of Appeals for the Fifth Circuit has held squarely that there can be no challenge of a grand jury or individual grand jurors other than for lack of legal qualification to sit as such. Estes v. United States, 335 F.2d 609, 613 (5th Cir. 1964), cert. den., 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). Cf. Martin v. Beto, 397 F.2d 741, 749–753 (5th Cir. 1968) (concurring opinion).

## MOTION TO DISMISS THE INDICTMENT BASED ON GRAND JURY ARRAY

■ The grand jury which indicted the defendant in this case was selected in accordance with a "Plan for Random Selection of Grand and Petit Jurors Pursuant to the Jury Selection and Service Act of 1968." This plan, prepared pursuant to the Jury Selection and Service Act of 1968, Title 28 U.S.C.A. § 1861 et seq., was unanimously approved by all the judges comprising the United States District Court for the Eastern District of Louisiana on September 10, 1968. It is on file for public inspection in the Office of the Clerk of Court for the Eastern District of Louisiana. In compliance with Title 28 U.S.C.A. § 1863(a), the United States Court of Appeals for the Fifth Circuit has examined the plan in detail to determine whether or not it properly implements the Act, and by an order dated September 10, 1968 has approved its adoption for use in this District. The defendant, however, based on "information and belief," contends that the plan does not in fact comply with the Act principally because, he says, it does not assure a grand jury composed of a true cross-section of the community. There is no evidence whatsoever in the record of this case to support such a con-

tention. The procedure for contesting the grand jury array is spelled out in Title 28 U.S.C.A. § 1867. The pertinent provisions provide:

"(a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

\*　　\*　　\*　　\*　　\*　　\*

"(d) Upon motion filed under subsection (a) \* \* \* of this section, *containing a sworn statement of facts* which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. \* \* \*" (Emphasis added.)

Defendant has failed to file the sworn statement mentioned in § 1867(d) in support of his motion, and has in fact presented no evidence at all that the grand jury array is unsound. The motion is denied.

### MOTION FOR NAMES OF WITNESSES APPEARING BEFORE THE GRAND JURY

 The traditional view in this area is that a criminal defendant's efforts to penetrate the grand jury proceedings solely for the purpose of discovery are not favored. 1 Wright, Federal Practice and Procedure (Criminal), § 108, p. 187, fn. 56 (1969). But if a defendant can show a "particularized need" for access to the names of witnesses appearing before the grand jury or for a transcript of their testimony,

then under the liberalized discovery provisions of Rule 16 of the Federal Rules of Criminal Procedure such information should ordinarily be made available to him by the government. Id. at § 108. See, Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). The "particularized need" in this case said by defendant to justify his discovery of the names of witnesses appearing before the grand jury is to allow him to challenge the sufficiency of the indictment against him on the ground that it was largely based on "heresay (sic) and other incompetent evidence." As a matter of law, however, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have clearly held that indictments are not open to challenge on the ground that hearsay or otherwise incompetent evidence was presented to the grand jury which returned the indictment. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. James, 290 F.2d 866 (5th Cir. 1966); 1 Wright, Federal Practice and Procedure (Criminal), § 111 (1969). Thus, making the requested information available to the defendant in this case would serve no useful purpose other than to permit him to learn the identity of the government's prospective trial witnesses. This we decline to do. The motion is denied. See, Downing v. United States, 348 F.2d 594, 599 (5th Cir. 1965).

### MOTION FOR A BILL OF PARTICULARS

 "The function of a bill of particulars is to provide [the] defendant with information about the details of the charge against him if \* \* \* necessary to the preparation of the defense, and to avoid prejudicial surprise at the trial." 1 Wright, Federal Practice and Procedure (Criminal), § 129, p. 283 (1969). It is not intended that it be used as a discovery device, and whether or not the government will be ordered to respond to the defendant's request for information rests, under Rule 7(f) of the Federal Rules of Criminal Procedure, in

the sound discretion of the trial court. We consider here defendant's request to be informed of: (1) the time, city, specific date, and address at which the alleged violation took place; (2) the date on which the alleged victim, Wade McClanahan, first became a witness in Criminal Action No. 1842; (3) when, how, and by whom was defendant informed that McClanahan was a witness in Criminal Action No. 1842; (4) who was present when the alleged violation took place, and who, if anyone, acted in concert with defendant; (5) whether the "influence" was exerted other than by threats of "bodily harm" or "death;" (6) when was the first report of the alleged violation made to the authorities; (7) where is the alleged victim presently located and in whose custody is he being held; and (8) by what means was the "bodily harm" or "death" threatened. The government has responded only to the extent of informing defendant that the incident in question took place on or about January 16, 1970 in the city of Baton Rouge, Louisiana, somewhere within the premises of the East Baton Rouge Parish Prison. The government declines to provide any further information concerning the details of the alleged crime. The test to be applied in resolving this issue, in keeping with the function of a bill of particulars, is simply whether or not this Court finds it necessary for defendant to have the particulars sought in order to adequately prepare his defense and thus avoid prejudicial surprise at trial. It is the opinion of this Court that the particulars sought within the four corners of this motion are not necessary for the preparation of the defense in this case. The crime with which defendant is charged is straight forward and uncomplicated. Either he unlawfully attempted to influence Wade McClanahan in the discharge of his duty as a witness or he didn't. The requested information is simply not essential to a defense against that charge. What defendant is really seeking here is government disclosure of certain evidentiary matters which this Court feels are more properly matters of proof to be presented at the trial of the case. Evidentiary matters are not the proper subject matter of a bill of particulars. 1 Wright, Federal Practice and Procedure (Criminal), § 129, p. 286, fn. 48 (1969). The motion is denied.

## MOTION TO PRODUCE ALL EVIDENCE IN THE POSSESSION OF THE GOVERNMENT FAVORABLE TO THE DEFENDANT

 This motion rests on the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) wherein that Court held in a landmark decision that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1196–1197. Commenting on Brady in Williams v. Dutton, 400 F.2d 797, 800–801, (5th Cir. 1968) the United States Court of Appeals for the Fifth Circuit stated:

> "It is now clear that *Brady* imposes an affirmative duty on the prosecution to produce at the *appropriate* time requested evidence which is materially favorable to the accused either as direct or impeaching evidence * * * The right of the accused to have evidence material to his defense cannot depend upon the benevolence of the prosecutor. Likewise, we reject appellant Williams' contention that the prosecution's file should have been open to him. Since a criminal defendant cannot be compelled to incriminate himself, discovery in a criminal trial must necessarily be substantially unilateral. We think that unlimited discovery of the state's files would unduly impair effective prosecution of criminal cases." (Emphasis added.)

The *Brady* motion in this case, being of the typical dragnet variety, includes a demand for the government to produce all evidence in its possession, (1) that is favorable to defendant and material to the issue of guilt or punishment, or (2)

that could reasonably weaken or affect the government case, or (3) that is relevant to the indictment, or (4) that may aid defendant in ascertaining the truth. The government agrees, as it must, that *Brady* requires disclosure of all evidence falling within the first category but strenuously contends that the remaining three categories do not fall within the scope of its *Brady* obligation. Moreover, the government argues that the *appropriate time* to make such disclosure comes only after it has rested its case-in-chief at defendant's trial. See, United States v. Leighton, 265 F.Supp. 27, 35 (S.D.N.Y.1967); United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D.N.Y.1965). We agree that *Brady* requires disclosure of only such evidence as falls within the first of the above-mentioned categories, but it is the opinion of this Court that the appropriate time for disclosure should not be in the middle of the trial after the government rests its case. If it is to be of any use to him at all, common sense dictates that evidence in the government's possession favorable to the defendant should be made available to him far enough in advance of trial to allow him sufficient time for its evaluation, preparation, and presentation at trial. Otherwise, the trial might well have to be interrupted for an inordinate length of time until the defendant has had an opportunity to explore all the ramifications of the government's disclosure, track down distant witnesses, examine documents, or the like. Such probable delay could sensibly be avoided by pretrial disclosure in those cases where disclosure is called for. It is therefore the decision of this Court that if the government has in its possession now, or hereafter comes into possession of any evidence that could fairly be construed as favorable to the defendant and material to the issue of guilt or punishment, it must immediately disclose same to the defendant. Under no circumstances, however, will the government be required to open its files for defendant's inspection or otherwise be required to disclose statements protected by the Jencks Act. See, Williams v. Dutton, supra; United States v. Ladd, 48 F.R.D. 266 (D.Alaska 1969).

## MOTION TO SUPPRESS EVIDENCE ILLEGALLY OBTAINED BY WIRETAPPING

In response to this motion, the government has filed an affidavit in the record of this case executed by Mr. James D. Carriere, Esq., the Assistant United States Attorney responsible for investigation, preparation, and trial of this case, stating that it has not employed wiretaps or any other form of electronic surveillance against defendant in connection with this prosecution. There is absolutely no evidence in the record to the contrary. The motion is denied.

## MOTION TO PRECLUDE GOVERNMENT'S USE OF DEFENDANT'S PRIOR CRIMINAL RECORD

Defendant asks in this motion that "the Court * * * view said defendant's prior criminal record, in limine, and thereafter order that such evidence be not used by the Government or its witnesses at the time of the trial of the case, due to its unrelated nature and remoteness in point of time to the charges pending herein." The request is based on the recent decisions of the United States Court of Appeals for the District of Columbia Circuit in Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965) and Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967) which hold that the criminal "defendant who has a criminal record may ask the [trial] court to weigh the probative value of the convictions as to * * credibility against the degree of prejudice which the revelation of his past crimes would cause; and he may ask the court to consider whether it is more important for the court to hear his story than to know about prior convictions in relation to his credibility." 127 U.S. App.D.C. at 346, 383 F.2d at 939. These decisions, however, are in sharp contrast with the prevailing weight of authority in other federal courts. See, Burg v.

United States, 406 F.2d 235, 236–237 (9th Cir. 1969). The more usual rule is that prior convictions are a legitimate tool with which to impeach the credibility of any witness, including the defendant who testifies in his own behalf, or, if the defendant introduces evidence of his "good character," as evidence of his "bad character." See McCormick, Evidence, § 43, pp. 89–94, § 158, pp. 333–338 (1954). Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Recent decisions of the United States Court of Appeals for the Fifth Circuit make no mention of the *Luck-Gordon* distinction. See, United States v. Smith, 420 F.2d 428 (5th Cir. 1970); Peel v. United States, 410 F.2d 1141 (5th Cir. 1969); Pinkney v. United States, 380 F.2d 882 (5th Cir. 1967). Cf. Roberson v. United States, 249 F.2d 737 (5th Cir. 1957). The motion is denied.

## MOTION TO ENJOIN PREJUDICIAL PUBLICITY AND TO CALL THE PRESS TO CHAMBERS FOR PRE-TRIAL CONFERENCE

The motion is denied. The rules regarding the subject matter of "Free Press—Fair Trial" adopted by this Court on September 19, 1969 are more than adequate to control any anticipated publicity problems arising out of the trial of this case.

## MOTION TO PERMIT DEFENSE COUNSEL TO PERSONALLY VOIR DIRE PROSPECTIVE PETIT JURORS

The motion is denied. Rule 24(a) of the Federal Rules of Criminal Procedure provides as follows:

"The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

Local Rule 18(A) adopted by the United States District Court for the Eastern District of Louisiana provides as follows:

"*Voir Dire Examination.* (a) All Voir Dire Examinations of prospective jurors will be conducted by the judge alone save by special leave of Court. (b) Counsel may submit, orally or in writing, questions to be asked upon such examination."

We see no reason to deviate from the practice heretofore adopted and set out in Local Rule 18(A) in this case.