**UNITED STATES of America,
Plaintiff,**

v.

**Stanley HOLDER, Defendant.**

**UNITED STATES of America,
Plaintiff,**

v.

**Carter CAMP, Defendant.**

**UNITED STATES of America,
Plaintiff,**

v.

**Leonard CROW DOG,
Defendant.**

**Nos. 74-5098 to 74-5100.**

United States District Court,
D. South Dakota, W. D.

May 2, 1975.

William F. Clayton, U.S. Atty., Sioux Falls, S. D., R. D. Hurd and David R. Gienapp, Asst. U. S. Attys., for plaintiff.

Kenneth E. Tilsen, St. Paul, Minn., for Leonard Crow Dog.

Joseph Beeler, Coconut Grove, Miami, Fla., for Carter Camp.

Frances C. Schreiberg, Berkeley, Cal., Wounded Knee Legal Defense/Offense Committee, Council Bluffs, Iowa, for Stanley Holder.

## ORDER

McMANUS, District Judge, Sitting by Designation.

This matter is before the court on defendants' resisted motion for determination of venue, or in the alternative, for transfer of venue, filed April 16, 1975.

These criminal prosecutions arise out of alleged unlawful activities by the three defendants during the "Wounded Knee Takeover," an incident occurring on the Pine Ridge Indian Reservation, South Dakota, between February 27, 1973 and May 8, 1973. The procedural history of these prosecutions is an essential ingredient to a comprehension of the issues posed by defendants' motions now pending in this court. A brief recitation of that procedural chronology follows.

On March 20, 1973, a federal grand jury in South Dakota returned identical nine-count indictments against defendant Carter Camp and four other individuals—Clyde Bellecourt, Pedro Bissonette, Russell Means and Dennis Banks.[1] Charged in these indictments were eight substantive violations and one conspiracy offense.

Subsequently, additional indictments were returned against these five individuals on April 10, 1973, charging each of them with two more substantive counts.[2] At the same time, eleven-count indictments were returned against defendants Stanley Holder and Leonard Crow Dog,[3] each alleging verbatim the same offenses, except for naming the accused, as had been charged against the five aforementioned persons.

The seven defendants in these previous actions moved the court to consolidate their cases for trial. The Honora-

---

1. The indictments were returned as follows:
 (1) Clyde Bellecourt, CR 73–5031;
 (2) Pedro Bissonette, CR 73–5032;
 (3) Carter Camp, CR 73–5033;
 (4) Dennis Banks, CR 73–5034;
 (5) Russell Means, CR 73–5035.

2. These supplemental indictments were numbered as follows:

 (1) Dennis Banks, CR 73–5062;
 (2) Russell Means, CR 73–5063;
 (3) Clyde Bellecourt, CR 73–5064;
 (4) Carter Camp, CR 73–5065;
 (5) Pedro Bissonette, CR 73–5066.

3. The indictments returned against defendants Holder and Crow Dog were numbered CR 73–5067 and CR 73–5077, respectively.

ble Fred J. Nichol, Chief Judge of the District of South Dakota, ordered a joint trial of the cases against Means and Banks, but denied the motion with respect to the other defendants.

Review of this denial was sought in the 8th Circuit Court of Appeals through a petition for writ of mandamus. The petition was denied by the appellate court on August 29, 1973. However, the court entered a separate order directing that all seven cases be under the direct supervision of Chief Judge Nichol, the cases previously having been partially the responsibility of another judge in the District, the Honorable Andrew W. Bogue.

Upon motion of the defendants and a showing of prejudice against the defendants in South Dakota, Judge Nichol, by order of October 29, 1973, transferred venue pursuant to Rule 21(a), FRCrP, to St. Paul, Minnesota, in the cases against Means, Banks, Bellecourt, Camp, Holder, and Crow Dog.

Joint trial of Means and Banks commenced on January 8, 1974. One count of the indictments was dismissed prior to trial, *United States v. Banks,* 368 F. Supp. 1245, 1248 (D.S.D.1973), and judgment of acquittal was rendered by the court on five of the remaining substantive counts at the close of the Government's case. *United States v. Banks,* 383 F.Supp. 368 (D.S.D.1974).

During jury deliberations on the remainder of the case, one juror became ill and unable to continue. Citing the Government's refusal to consent to an eleven-member jury as another event in a cumulative series of Government misconduct during the trial, the court orally dismissed the remaining counts of the indictment on September 13, 1974. This ruling was supplemented with a written decision, *United States v. Banks,* 383 F. Supp. 389 (D.S.D.1974), from which an appeal was dismissed because the Double Jeopardy Clause prohibited review under the Criminal Appeals Act, 18 U.S.C. § 3731 (1970). *United States v. Banks,* 513 F.2d 1329 (8th Cir., 1975).

Meanwhile, on December 12, 1974, the three indictments involved in the instant cases were returned against defendants Holder, Camp, and Crow Dog by another grand jury in South Dakota.[4] All defendants are charged in two identical counts,[5] and defendants Camp and Crow Dog are each charged with a separate third count.[6]

The original four indictments against these defendants were dismissed on February 5, 1975, upon the Government's request pursuant to Rule 41(a), FRCrP. Subsequently, Judge Nichol recused himself from the cases now pending, and they have been assigned to the undersigned judge.

### Determination of Venue

Defendants move the court to enter an order declaring venue to have been determined by the previous ruling of Judge Nichol to be in the District of Minnesota, Third Division, for the instant cases. Alternatively, the defendants ask for a transfer of venue under Rule 21(a), FRCrP, to the District of Minnesota. Defendants further request

---

4. The indictments were returned as follows:
 (1) Stanley R. Holder, CR 74–5098;
 (2) Carter Camp, CR 74–5099;
 (3) Leonard Crow Dog, CR 74–5100.

5. Count I charges defendants with wilfully impeding a Postal Inspector while in the performance of his duties, in violation of 18 U.S.C. §§ 111 and 1114 (1970). Count II charges defendants with robbing another of personal property belonging to the United States within the Pine Ridge Indian Reservation, in violation of 18 U.S.C. §§ 1153 and 2112 (1970).

6. Count III in CR 74–5099 charges defendant Camp with assaulting an agent of the FBI with a deadly weapon while the agent was performing his official duties, in violation of 18 U.S.C. §§ 111 & 1114 (1940). Count III in CR 74–5100 charges defendant Crow Dog with wilfully taking with intent to steal personal property of another valued at more than $100 within the Pine Ridge Indian Reservation, in violation of 18 U.S.C. §§ 661 and 1153 (1970).

a hearing to present evidence in support of their motion.

The argument presented to bolster the defendants' first alternative request is that these proceedings, having been instituted by superseding indictments, are a continuation of the former prosecutions. Venue for trial of the charges alleged in the previous indictments had been set in the District of Minnesota. That ruling, it is urged, is the law of the case, should not be overturned by a coordinate judge, and furthermore should bar relitigation under the principle of collateral estoppel. It is the court's view that defendants' position on this aspect of their motion is not well taken.

In a federal criminal case, the Constitution of the United States imparts to the accused a right to a trial in the vicinage of the crime. Specifically, Art. III, Sec. 2 provides in part:

"The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed. . . ."

And the Sixth Amendment provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

However, concurrently with the right to a trial in the state and district where the offense was committed, the Sixth Amendment also guarantees the right to an impartial jury. *Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). The right to a fair trial before an impartial tribunal is a fundamental ingredient of due process. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *United States v. McNally,* 485 F.2d 398, 402 (8th Cir. 1973).

The due process right to a fair trial inures to the benefit of an accused in a federal trial through the Fifth Amendment, *Jones v. Gasch,* 131 U.S.App.D.C. 254, 404 F.2d 1231, 1234 (1967); *Vandergrift v. United States,* 313 F.2d 93, 96 (9th Cir. 1963), and in a state trial through the Fourteenth Amendment. *Estes v. Texas,* 381 U.S. 532, 534–35, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Irvin v. Dowd,* 366 U.S. 717, 721–22, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Pretrial publicity may so infuse prejudice into the populace from which a jury is to be drawn as to violate this right to a fair trial. *Irvin v. Dowd, supra; Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

It is in the interplay between these two constitutional rights that Rule 21(a), FRCrP,[7] comes into prominence. The Rule provides a procedural device for the defendant to waive his right to a trial in the place where the crime was committed in order to maximally protect his right to a fair and impartial hearing. *United States v. Marcello,* 280 F. Supp. 510 (E.D.La.1968), *aff'd* 423 F. 2d 993 (5th Cir. 1970), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

A transfer for trial under Rule 21(a) can only be made upon motion by the defendant and a showing by him to the court's satisfaction that he cannot obtain a fair trial at any court point in the district. *McNally, supra* at 403; *Marcello, supra* at 513–14. The prejudice shown by the defendant must relate to the improbability of obtaining a fair hearing at the time of trial on the charges in the pending case. *United*

---

7. Rule 21(a), Federal Rules of Criminal Procedure, provides:

"The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district."

*States v. Partin*, 320 F.Supp. 275, 279–80 (E.D.La.1970). And the determination to transfer under this Rule cannot be made until an indictment or information stating the charges is on record. *In re Investigation of World Arrangements, etc.*, 107 F.Supp. 628, 630 (D.D. C.1952); *mandamus denied sub nom. In re Texas Co.*, 201 F.2d 177, *cert. denied*, 344 U.S. 904, 73 S.Ct. 283, 97 L. Ed. 698 (1952).

██ Here the defendants argue that the indictments currently on record are a mere continuation of the former proceedings because the charges are essentially the same as some charges contained in the previous indictments and further that the charges arise from the same set of factual events which led to the charges in the earlier indictments. It is argued that Counts I and II of the present indictments were included in paragraph 3 of Count IX, the conspiracy count, in the original indictments as part of an allegation relating the scope of the conspiracy. In the court's opinion, the substantive charges in the current indictments are not identical with or a mere continuation of the conspiracy count in the now-dismissed indictments.

██ Count III in defendant Camp's pending indictment is identical with Count III of the original indictment except that the name of the assaulted FBI agent has been changed. This too appears to the court as a substantial change in the offense charged. However, Count III of Crow Dog's current indictment is substantially the same as Count I of the previous indictment, the only change being a one day difference in the date of the alleged offense.

See *Stewart v. United States*, 395 F.2d 484, 487 (8th Cir. 1968).

██ Thus the question posed is whether an order changing venue in a federal criminal prosecution is conclusive as to the venue where the original indictment is dismissed after motion by the Government under Rule 48(a) but a superseding indictment charges some identical offenses plus other offenses arising from the same incident which precipitated the first indictment.

No case deciding this point has been cited by the parties, and the court has likewise found no clear precedent. Reported decisions from state courts have reached contrary results. Compare *Ex parte Lancaster*, 206 Ala. 60, 89 So. 721 (1921), and *Johnston v. State*, 118 Ga. 310, 45 S.E. 381 (1903), (previous ruling is determinative), with *Gonzalis v. Lynch*, 282 P.2d 255 (Okl.Cr.1955), and *State ex rel. English v. Normile*, 108 Mo. 121, 18 S.W. 975 (1891), (dismissal of prior case terminates jurisdiction in transferee court and venue must be determined anew in subsequent prosecution). These cases are not controlling here, of course, because they deal with interpretations of particular state venue statutes, and further differ in that the second prosecution had always been brought on charges identical to the first.

However, the reasoning of the court in *Gonzalis, supra,* would seem applicable here. Dismissal of the indictment brought the initial prosecution to an end. The superseding indictment[8] begins an independent prosecution, especially where new charges are included, with venue in the state and district where the crime was committed and not

---

8. The Government may obtain a second indictment charging identical or similar offenses and arising from the same events as a previous indictment either prior to or after dismissal of the earlier indictment under Rule 48(a), FRCrP. *DeMarrias v. United States*, 487 F.2d 19 (8th Cir. 1973), *cert. denied*, 415 U.S. 980, 94 S.Ct. 1570, 39 L. Ed.2d 877 (1974); *United States v. Clay*, 481 F.2d 133 (7th Cir. 1973), *cert. denied*, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 133

(1973); *United States v. Bowles*, 183 F. Supp. 237 (D.Me.1958). Of course the statute of limitations may run if a lapse of time occurs between dismissal and reindictment, or if the indictments are at all contemporaneous, continuous custody may trigger delay infringing a defendant's Sixth Amendment right to a speedy trial. See *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

transferable prior to the return of the indictment. *See World Arrangements, supra.* Of course, defendant can again move for a transfer of venue under Rule 21, and the trial judge can take judicial notice of the evidence adduced in the previous ruling, giving it such weight as in his discretion it merits on the question of continuing prejudice.

 Defendants' contentions that collateral estoppel and the deference given to prior rulings by judges of coordinate jurisdiction should prevent this court from determining that venue is not in the District of Minnesota are inapposite here. Collateral estoppel refers to litigation of the exact issue in a previous case. The issue of whether defendants can obtain a fair trial in South Dakota on the instant charges at the present time was not decided in the prior ruling. Similarly, since Judge Nichol's order did not reach the issue of venue on the cases now pending, it is not overruled by this decision.

 Finally, defendants argue that by not declaring venue to be set in Minnesota, the effect is to allow the Government to transfer venue back to South Dakota. As the court has previously noted, this analysis fails because the instant proceedings are new cases in which the defendants' constitutional rights to a trial in the locality of the crime are attached at the outset.

Indeed the defendants' feared effect could well result if their proposition were accepted by the court. In a proper case, the defendant might wish to have a subsequent indictment asserting different charges tried in the vicinity of the crime, as where new evidence caused dismissal of a prior indictment and may have also changed public reaction. But to hold that a transfer of venue ordered in the previous case was *conclusive* as to venue on any subsequent charges arising from the same facts would have the effect of allowing the Government to determine venue in the second case to the detriment of the defendant's constitu-

tional right. A better resolution is to have venue placed in the vicinity of the crime at the instigation of the new charges, with defendant having the option once again to waive his right and seek a transfer under Rule 21.

### Transfer of Venue

 Defendants move alternatively to have these cases transferred for trial to the District of Minnesota pursuant to Rule 21(a), FRCrP. In support of this motion, defendants incorporate by reference the briefs and supporting documents submitted on the change of venue motion in the previous cases against Means, Banks and the defendants herein. An oral hearing is requested to present further evidence, but in light of the court's conclusions below, no further hearing is necessary.

To obtain a change of venue under Rule 21(a), the burden is upon the defendants to establish a reasonable likelihood that prejudice in the District of South Dakota will prevent a fair and impartial trial. *United States v. Marcello, supra* at 513–14; *United States v. Kline,* 205 F.Supp. 637, 639–40 (D.Minn.1962). Ordinarily, the proper time for determining whether widespread prejudice prohibits selecting an impartial jury is during *voir dire. United States v. McNally, supra* at 403; *Blumenfield v. United States,* 284 F.2d 46, 51 (8th Cir. 1960), *cert. denied,* 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961); *United States v. Kline, supra* at 640.

However, when the probability of prejudice is great because of deeply-rooted passions or recent massive publicity, the efficacy of *voir dire* in screening the prospective jurors is diminished. *Groppi v. Wisconsin,* 400 U.S. 505, 510, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971); *Irvin v. Dowd, supra,* 366 U.S. at 727–28, 81 S.Ct. 1639. In such a situation the court may become satisfied even prior to *voir dire* that the probability of a fair trial in the district is minimal. *United States v. Marcello, supra* at 514. *See*

*United States v. Rossiter*, 25 F.R.D. 258 (D.Puerto Rico 1960).

Here, the affidavits and other supporting materials filed in previous cases, particularly the survey data, indicate not only massive publicity surrounding the whole incident, but more significantly a deeply-felt prejudice toward Indians which was tremendously reinforced by the Wounded Knee affair. While the volume of inflammatory media coverage has subsided, and temporary feelings thereby allowed to ameliorate, the court is satisfied upon reviewing the documentary evidence and the Government's resistance thereto that the long-term prejudices which were evident at the time of the prior change of venue are still present and create a reasonable likelihood of impairing the defendants' rights to a fair trial on the charges now outstanding against them in connection with the Wounded Knee takeover.

Having found the necessity for transfer, Rule 21(a) permits the court to transfer the cases to any other district "whether or not such district is specified in defendant's motion." The motion itself constitutes a waiver of the constitutional right to trial in the district where the crime was committed. *United States v. Marcello, supra* at 520; Rule 21, FRCrP, Advisory Committee Notes, Comment 3. The court may exercise its discretion and choose the district to which the cases are to be transferred. *United States v. Anguilo*, 497 F.2d 440, 441 (1st Cir. 1974); *United States v. Marcello, supra* at 520; 8 Moore's Federal Practice ¶ 21.01[1]. Accordingly, venue in these cases is transferred to the Northern District of Iowa, Cedar Rapids Division.

It is therefore

Ordered

1. Motion in the alternative denied on determination of venue and granted in part on change of venue as indicated in text; the Clerk shall forthwith forward the files in these cases to the Clerk of the United States District Court for the Northern District of Iowa.

2. Trial of these cases shall commence at 9:00 a. m. June 2, 1975, at the United States Courthouse, Cedar Rapids, Iowa.